UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PULSE ENGINEERING, INC., ) | | |
|     Plaintiff, ) | | |
| ) | | |
| vs. ) | 1:06-cv-1237-LJM-JMS | |
| ) | | |
| THE TRAVELERS INDEMNITY ) | | |
| COMPANY, INSURANCE COMPANY OF ) | | |
| NORTH AMERICA, THE NORTH RIVER ) | | |
| INSURANCE COMPANY, INDUSTRIAL ) | | |
| INDEMNITY COMPANY, and THE ) | | |
| CENTRAL NATIONAL INSURANCE ) | | |
| COMPANY OF OMAHA. ) | | |
|     Defendants. ) | | |

## ORDER ON CHOICE OF LAW

Pending before the Court are several Motions for Summary Judgment on the issue of choice of law. Dkt. Nos. 86, 87, 201, 204, 207. For the following reasons, the Court determines that Indiana law applies to this case.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

In this action, Pulse Engineering, Inc. ("Pulse") seeks a declaration of the scope of its rights under several insurance contracts with respect to certain defense and environmental response costs. Dkt. No. 278 at ¶1. This lawsuit began in 2004, when Pulse sued Federal Insurance Company ("Federal"), Pacific Indemnity Company ("Pacific"), and Hartford Accident and Indemnity Company ("Hartford") in Marion Superior Court. Dkt. No. 1-4. On November 8, 2005, the Marion Superior Court granted in part and denied in

part Pulse's motion for summary judgment on the issue of coverage. Dkt. No. 17, Ex. B. In early 2006, Pulse discovered that Travelers Indemnity Company ("Travelers") provided coverage during the relevant time period, and on July 31, 2006, the Marion Superior Court granted leave to Pulse to file an Amended Complaint that named Travelers as a Defendant. Dkt. No. 92 at 9. Around this time, Pulse settled with Federal, Pacific, and Hartford, which were each dismissed from the case by the time it was removed to this Court on August 16, 2006. *Id.*; Dkt. Nos. 1; 17, Ex. C. On July 31, 2008, Pulse filed a Third Amended Complaint, naming three more Defendants: Insurance Company of North America ("INA") (whose successor company is Century Indemnity Company ("Century")), North River Insurance Company ("North River"), and Industrial Indemnity Company ("Industrial") (which has so far been represented by Westchester Fire and Insurance Company ("Westchester")). Dkt. Nos. 101 at 1; 278 at ¶ 7.

On May 4, 2009, Pulse unearthed evidence of insurance policies issued by Central National Insurance Company of Omaha ("Central National") to GTI through a subpoena to nonparty Swett & Crawford. Dkt. No. 264-1 at ¶ 6. On August 31, 2009, Ace Limited—the parent company of Century, Westchester, and Central National—produced to Pulse three primary-level Central National policies, despite the fact that Pulse requested this information from Westchester in December 2007. *Id.* at ¶¶ 3, 10. Pulse filed a Fourth Amended Complaint adding as a Defendant Central National (which is represented by Century). Dkt. No. 278.

### B.  PULSE/GTI

Pulse is a Delaware corporation with its principal place of business in California. Dkt. No. 278 at ¶ 2.  Pulse is the successor company to GTI Corporation ("GTI"), which was a Rhode Island company headquartered in Pennsylvania from the late 1960s until it moved to California between the third quarter of 1977 and the end of the first quarter of 1978.  Dkt. Nos. 114 at 2; 208-9 at 4.  GTI had manufacturing facilities and employees located in California, Indiana, Pennsylvania, New York and, for part of the relevant time period, West Germany.  Dkt. No. 113 at 2.

Between 1967 and 1971, the Pennsylvania division of GTI generated more sales than any other division—more than double the sales of the Leesburg, Indiana, site (the "Indiana site") most years. Dkt. No. 113-2 at 1.  The relevant evidence suggests that the Pennsylvania division continued to lead in sales from 1972 to 1979.  *See* Dkt. Nos. 116-1 at 19; 113 at 4-5; 90-2 at 50, 85.  During the years 1973 through 1975, the square footage of the facilities were larger in Pennsylvania than any other state by nearly double.  Dkt. No. 113 at 5.  In 1976, the GTI facilities in Pennsylvania were marginally larger than in any other state.  *Id.*  In 1977-79, the Indiana site facilities were marginally larger than the facilities in Pennsylvania.  *Id.*

### C.  THE INDIANA SITE

GTI owned and operated the Indiana site from 1965–1992.  Dkt. Nos. 92 at 2; 90 at 5.  During this time, GTI produced circuit boards.  Dkt. Nos. 90 at 5; 113 at 3-4.  Prior to GTI's ownership of the Indiana site, Milford Machine owned it from 1952 to 1963 and

produced on it crank shafts for lawn mowers and motor boats. Dkt. No. 90 at 5. The Dytronics Division of Synthane owned it from 1963 to 1965 and produced on it circuit boards. *Id.*

Since 1987, the Environmental Protection Agency ("EPA") and the Indiana Department of Environmental Management ("IDEM") have on several occasions inspected and identified environmental problems on the Indiana site that required action by GTI. Dkt. No. 90 at 6-9. On November 30, 1994, IDEM sent GTI an Agreed Order and a Notice of Violation. GTI and IDEM began negotiations regarding the cleanup, and ultimately GTI entered into a "Corrective Action Agreed Order" with IDEM on June 2, 1998. Dkt. No. 278 at ¶ 1, 10. In January 2003, GTI entered into an "Amendment to Corrective Action Agreed Order" with IDEM *Id.* at ¶ 10. The soil removal required by the Amended IDEM Order is complete. Dkt. No. 92 at 3. On May 2, 2007, IDEM approved Pulse's groundwater cleanup plan, which will cost $840,112.00 to implement. *Id.*

### D. THE ISSUANCE OF THE INSURANCE POLICIES

The different insurers in this case issued primary and umbrella layer comprehensive general liability ("CGL") policies to GTI between 1966 and 1981. INA issued primary and umbrella policies for coverage from January 1966 to March 1971. Dkt. No. 208 at 3; Ex. B, Attach 1. The insurance brokers for these policies were from Pennsylvania: Tanner, James & Cowell of Erie Pennsylvania, and Johnson & Higgins of Pennsylvania, Incorporated. Dkt. No. 206, Ex. B at ¶¶ 5, 16. INA was incorporated in Pennsylvania, which was its principal place of business. Dkt. No. 208 at 4.

Travelers issued primary and umbrella layer CGL coverage to GTI from March 3,

1971, through June 30, 1978. Dkt. No. 92, Ex. E at ¶ 3. Travelers was incorporated in Connecticut, which was also the location of its principal place of business. Dkt. No. 208 at 4. While GTI's headquarters were located in Pennsylvania, the insurance was coordinated through the Pittsburgh, Pennsylvania, office of insurance broker Johnson & Higgins ("J&H"). Dkt. No. 90, Ex. B at 70. The 1971-78 policies were underwritten by Travelers' Pittsburgh office, and the 1978-79 policies were underwritten by the Travelers' Hartford, Connecticut, office. Dkt. No. 113 at 18. Travelers' president and secretary signed the policies at the Hartford, Connecticut, office. Dkt. No. 90-7 at 9, 23, 42, 89. North River issued an umbrella policy to GTI providing coverage from April 3, 1977, to March 1, 1980. At least some of the negotiations relating to the policy issued by North River to GTI were tied to Pennsylvania. Dkt. No. 202, Ex. C at ¶ 6. North River was incorporated in New Jersey, which was also its principal place of business. Dkt. No. 208 at 4.

Pulse has produced documents referring to a policy that may have been issued by Industrial Indemnity in 1978 or 1979. Dkt. No. 101-4. These documents indicate that all communications regarding this policy were from California. Industrial Indemnity was incorporated in California, which was also its principal place of business. Dkt. No. 208 at 4.

The most recent Defendant, Central National, issued primary liability policies to GTI from July 1, 1979, to July 1, 1981. Central National is based in Nebraska, and the policies were issued to GTI by Cravens, Dargan and Company out of Los Angeles, California. *See* Dkt. No. 278 at 3, Exs. A–C.

## II. STANDARD

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56 (c), which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *Id.* at 248; *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).

Where the court is faced with cross-motions for summary judgment, "the court must construe all inferences in favor of the party against whom the particular motion is made." *Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Maclin*, 520 at 786.

## III. DISCUSSION

Because this case was filed in Indiana, the determination as to which state's substantive law applies is governed by Indiana law. *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002). Pulse argues that Indiana law should apply, and the

insurance companies argue that Pennsylvania law should apply.

"Ordinarily a choice of law issue will be resolved only if it appears there is a difference in the laws of the potentially applicable jurisdictions." *Allen*, 766 N.E.2d at 1162. Defendants argue that Pennsylvania law differs from Indiana law in several ways, whereas Plaintiff argues that "[t]here is no dispositive difference between Indiana and Pennsylvania decisions on the central insurance issues here" and therefore "[n]o choice of law determination is necessary . . . ." Dkt. No. 92 at 12. The Court determines that differences in Indiana and Pennsylvania environmental law that may potentially apply in the case at bar warrant a choice of law analysis. *Compare Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind. 1996) (holding that an insurance policy containing a pollution exclusion was ambiguous and thus unenforceable where the definition of "pollutant" was arguably broad enough to include gasoline, which would have effectively excluded the major source of the gas station's potential liability and negate virtually all coverage) *with Wagner v. Erie Ins. Co.*, 801 A.2d 1226, 1232-33 (Pa. Super. Ct. 2002), *aff'd*, 847 A.2d 1274 (Pa. 2004) (holding, in the same situation, that gasoline was unambiguously a pollutant according to the terms of the policy), *and compare Travelers Indem. Co. v. Summit Corp. of Am.,* 715 N.E.2d 926, 936-38 (Ind. Ct. App. 1999) (holding that personal injury provisions are ambiguous on whether they apply to environmental damage and therefore should be construed in favor of the insured in this regard) *with O'Brien Energy Sys. v. Am. Employers' Ins. Co.*, 629 A.2d 957, 963-64 (Pa. 1993) (holding that an absolute pollution exclusion was "equally applicable to claims for personal injury" and that the "insurer did not eliminate the exclusionary language by providing additional coverage of the type listed in the 'personal injury' endorsement") *and Hussey Cooper, Ltd. v. Royal Ins. Co. of Am.*, 567 F. Supp. 2d

774, 781 (W.D. Penn. 2008) ("The 'personal injury' provisions in Royal's policies do not create an end-run around the absolute pollution exclusion, and there is no coverage.").

The Indiana Court of Appeals recently addressed the issue of what law should be applied where, as here, one liability insurance contract applies to several locations of risk scattered throughout more than one state. *See Nat'l Union Fire Ins. Co. v. Std. Fusee Corp*, 49A04-0811-CV-665, 2009 WL 4403233 (Ind. Ct. App. Dec. 3, 2009). The Indiana Court of Appeals followed Restatement (Second) of Conflict of Laws § 193, Comment f, which suggests treating a multiple risk policy "as if it involved [multiple] policies, each insuring an individual risk." The Indiana Court of Appeals concludes that "Section 193 creates a rebuttable presumption in favor of the state where the insured risk is located" that "may be overcome if another state's interest is sufficiently compelling as to outweigh those interests of the state where the insured risk is located . . . ." *Std. Fusee*, 2009 WL 4403233 at *5.

The Court is convinced by the benefits of this approach, including: certainty and predictability of result, ease in determining what law applies, and the protection of justified expectations. *See id.* at *5-6; Restatements (Second) of Conflict of Laws § 6. Accordingly, giving great weight to decision of the Court of Appeals, *see Pisciotta v. Old Nat'l Bancorp*. 499 F.3d 629, 635 (7th Cir. 2007), the Court accepts the holding in *Standard Fusee*.

Thus, the rebuttable presumption is that Indiana law applies to the case at bar, where the only insured risk property at issue is the Indiana site of GTI/Pulse. The other states having interests in this matter are New Jersey, Connecticut, Pennsylvania, and California. New Jersey is connected to this case because it is North River's state of incorporation. This interest is small and may not ultimately be relevant because Pulse and

North River recently filed a notice of settlement. *See* Dkt. No. 304. Connecticut's interest is also remote, consisting of Travelers' state of incorporation and the location where some of Travelers' policies were signed. Pennsylvania's interest in the case at bar is also minimal. While the policies at issue in this litigation have a great deal of exposure to risk in Pennsylvania, the application of the *Standard Fusee* ruling in this case encourages Pennsylvania law to apply to any causes of action that may arise under the policies pertaining to property in Pennsylvania. Pennsylvania is otherwise related to the action only in that INA was incorporated there and some of the policy negotiations and formations took place there. Of the four states, California has the strongest interest in the outcome of this case—in addition to the fact that some of policies were negotiated and signed there, Pulse is headquartered there.

The facts in *Standard Fusee* are nearly identical to those of the case at bar, and the Indiana Court of Appeals described Indiana's interest in that case as follows:

> Indiana has the most significant relationship to this transaction and the parties regarding the Indiana site. Those sites have an effect on the health and environmental well-being of this State's inhabitants. The State bears the brunt of the cleanup costs if the insured fails to remediate the site. Indiana's public policies in favor of coverage and construing policies of insurance in favor of the insured are impacted. Maryland and California have no interest in the remediation of Indiana's site.

*Std. Fusee*, 2009 WL 4403233 at *8 (citations omitted). This reasoning is equally applicable to the case at bar—Indiana's interest in resolving who will be funding the cleanup of the Indiana site is greater than the interest that California has regarding the potential liability of one of its corporations. As noted above, the interests of the other states related to this cause of action are relatively minor. Thus, none of the other four states related to this cause of action has an interest in the outcome that overcomes the

presumption that Indiana law applies.

## IV. CONCLUSION

Accordingly, Pulse's Motion for Summary Judgment (Dkt. No. 87) is **GRANTED in part** on the issue of choice of law, and Pulse's Cross Motion for Summary Judgment (Dkt. No. 207) on choice law is **GRANTED**.  Travelers' Motion for Summary Judgment (Dkt. No. 86) is **DENIED in part** on the issue of choice of law, and North River's and INA's Partial Motions for Summary Judgment on the issue of choice of law (Dkt. Nos. 201 and 204) are **DENIED**.

Dated:  12/18/2009

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Charles W. Browning
PLUNKETT & COONEY, P.C.
cbrowning@plunkettcooney.com

Brian C. Coffey
COHN BAUGHMAN & MARTIN
brian.coffey@mclolaw.com

William M. Cohn
COHN BAUGHMAN & MARTIN
william.cohn@mclolaw.com

Thomas J. Costakis
KRIEG DEVAULT, LLP
tcostakis@kdlegal.com

Michael L. Duffy
HINKHOUSE WILLIAMS WALSH, LLP
mduffy@hww-law.com

Dale W. Eikenberry
WOODEN & MCLAUGHLIN LLP
deikenberry@woodmclaw.com

Jeffrey B. Fecht
RILEY BENNETT & EGLOFF LLP
jfecht@rbelaw.com

Gregory M. Gotwald
PLEWS SHADLEY RACHER & BRAUN
ggotwald@psrb.com

J. Christopher Madden
COHN BAUGHMAN & MARTIN
christopher.madden@mclolaw.com

Donna C. Marron
PLEWS SHADLEY RACHER & BRAUN
dmarron@psrb.com

Richard McDermott
HINKHOUSE WILLIAMS WALSH, LLP
rmcdermott@hww-law.com

Brett E. Nelson
PLEWS SHADLEY RACHER & BRAUN
bnelson@psrb.com

Kenneth C. Newa
PLUNKETT & COONEY
knewa@plunkettcooney.com

Danielle Perez
PLUNKETT COONEY PC
dperez@plunkettcooney.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN
gplews@psrb.com

Aaron R. Raff
KRIEG DEVAULT LLP
araff@kdlegal.com

Laura Sue Reed
RILEY BENNETT & EGLOFF LLP
lreed@rbelaw.com